UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CALIFORNIA ASSOCIATION OF REALTORS, INC., | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 16-cv-11021-IT |
| PDFFILLER, INC., VADIM YASINOVSKY, and BORIS SHAKHNOVICH, | * * * * | |
| Defendants. | * * | |
| PDFFILLER, INC., | * * | |
| Counterclaim Plaintiff, | * * | |
| v. | * * | |
| CALIFORNIA ASSOCIATION OF REALTORS, INC., REAL ESTATE BUSINESS SERVICES, INC. and RE FORMSNET LLC d/b/a ZIPLOGIX, LLC | * * * * * * | |
| Counterclaim Defendants. | * | |

MEMORANDUM & ORDER

March 13, 2017

TALWANI, D.J.

Plaintiff and Counterclaim Defendant California Association of Realtors, Inc. ("CAR") has moved to disqualify attorneys from the law firm DLA Piper, LLP, from representing Defendants Vadim Yasinovsky and Boris Shakhnovich and Defendant and Counterclaim Plaintiff PDFfiller, Inc. in this matter based on CAR's attorney-client relationship with Jeffrey

Shohet. For the following reasons, <u>Plaintiff's Motion to Disqualify DLA Piper LLP Based upon Conflict of Interest</u> [#55] is DENIED.

I. <u>Background</u>

Shohet is a California-licensed attorney based in San Diego. He began his practice with a firm known as Gray Cary Ames and Frye, which through a series of combinations has been known since 2005 as DLA Piper, LLP ("DLA Piper" or "the Firm"). Shohet remained an attorney in the Firm's San Diego office until his recent retirement.

California Association of Realtors, Inc. ("CAR") is a California-based trade association representing 170,000 real estate professionals in California. Beginning in 1999, the Firm represented CAR and its individual directors in several lawsuits alleging violations of the Sherman Act and California Cartwright Act. Shohet served as lead counsel in one of the lawsuits in 2003. The Firm's retainer agreement relating to this litigation states that the engagement was "expressly limited" to the 2003 action, which concluded in 2005. The record is silent as to when the other cases ended, but there is no dispute that they had concluded by 2010.

In December 2003, the Firm opened a general advice account for CAR with the scope of legal services "to provide general advice from time to time as requested by [CAR]." Shohet was listed as "the Firm attorney assigned primary responsibility." The retainer letter described CAR as "an ongoing client of the Firm." The letter also described how the file would be disposed of "[a]t the conclusion of this matter."

Beginning in 2007, DLA Piper also represented CAR in a class action alleging violation of state unfair competition laws and a malicious prosecution action. Shohet consulted on the latter but did not provide representation, because he anticipated being called as a witness. He did not work on the class action. The record is ambiguous if additional retainer agreements were

entered into for the 2007 litigation, but, in any event, there is no dispute that all litigation had concluded by 2010.

After 2010, Shohet continued to advise CAR under the general advice account. From 2010 to 2015, Shohet billed a decreasing number of hours to the account. Between 2013 and 2015, Shohet billed only approximately five hours to the account, and Amanda Fitzsimmons, an associate based in the San Diego office, billed under two hours in 2015. Attorney Fitzsimmons' work was limited to discrete legal research not related to the facts and legal issues presented in this case. No DLA Piper attorney has performed legal work for CAR since 2015. At no time was CAR advised that the attorney-client relationship had been terminated, however, and CAR continued to regard Shohet as its counsel.

On June 2, 2016, CAR filed this trademark and copyright infringement action against PDFfiller; its CEO and secretary, Vadim Yasinovsky; and its president, treasurer, and director, Boris Shakhnovich. Shakhnovich contacted attorney Michael Strapp about the matter on June 8. Strapp, who has a longstanding personal relationship with Shakhnovich, had joined DLA Piper's Boston office five days earlier, on June 3.

A conflict search in the DLA Piper database reflected CAR's general advice account as an open matter. The director of DLA Piper's Intellectual Property Group emailed Shohet, asking him if he could close the general advice account because it had not reflected activity in the past ten months. Shohet agreed that it could be closed. The firm, treating CAR as a former client, concluded that representation of PDFfiller in this matter would not pose a conflict of interest.

Strapp and another DLA Piper attorney filed notices of appearance on Defendants' behalf on June 22, 2016. On July 26, with the agreement of the parties, this court referred the case to a

federal magistrate judge for alternate dispute resolution ("ADR"). The court stayed discovery pending a report from the magistrate judge.

On August 4, CAR's counsel sent a letter to Strapp, asserting that DLA Piper's representation in this matter posed a conflict of interest. That day, DLA Piper erected an ethical screen in which the attorneys representing PDFfiller were foreclosed from accessing information related to the firm's prior representation of CAR. To date, no attorney representing PDFfiller has accessed such a file, before or after the erection of the ethical screen. Nor have the PDFfiller attorneys communicated with Shohet or Fitzsimmons about this matter. DLA Piper further has constructed an ethical screen so that only attorneys in the Office of General Counsel have access to files related to the representation of CAR.

On August 22, 2016, PDFfiller filed antitrust counterclaims against CAR and third-party Defendants Real Estate Business Services, Inc. and RE FormsNet LLC d/b/a zipLogix, LLC. CAR.

CAR filed the instant motion on October 3, 2016, but did not move to stay proceedings or oppose PDFFiller's request for additional time to file its opposition to the disqualification motion. With the court's permission, PDFfiller responded on November 16.

The following day, November 17, the parties appeared before the magistrate judge for ADR proceedings. The case did not settle, but progress was made. On November 23, the parties filed a <u>Joint Motion to Stay All Deadlines for Sixty Days</u> [#88] pending ADR, in which they sought, *inter alia*, a stay of deadlines regarding additional briefing for CAR's motion to disqualify. The court allowed the motion and entered a stay until January 23, 2017. On January 1, 2017, while the case was stayed, Shohet retired from DLA Piper. Thereafter, on January 17, the federal magistrate judge reported that attempts at ADR had failed. CAR then moved to stay

all proceedings pending resolution of the disqualification motion. The court granted the further stay.

## II. Discussion

With limited exceptions, attorneys practicing in this district are bound by the ethical requirements embodied in the Massachusetts Rules of Professional Conduct, as incorporated in Rule 3.07 of the Rules of the Supreme Judicial Court of Massachusetts. See L.R. 83.6.1(a). Those Rules differentiate between current and former clients and give guidance regarding imputed disqualifications as to attorneys associated in a firm. See Mass. R. Prof. Conduct 1.7, 1.9, 1.10. Application of the Rules is complicated here by Attorney Shohet's termination of his relationship with DLA Piper as of January 1, 2017.

### A. Rules Governing the Attorney-Client Relationship at the Outset of the Litigation

The relationship between a client and his or her attorney is founded in the duty of undivided loyalty. Bryan Corp. v. Abrano, 52 N.E.3d 95, 101 (Mass. 2016); Bartle v. Berry, 953 N.E.2d 243, 249 (Mass. App. Ct. 2011); cf. Mass. R. Prof. Conduct 1.6 cmt. 2 (describing trust as "the hallmark of the client-lawyer relationship"). This duty forecloses an attorney "from acting for client A in one action and at the same time against client A in another," absent the clients' consent. McCourt Co., Inc. v. FPC Props., Inc., 434 N.E.2d 1234, 1235 (Mass. 1982). With exceptions not relevant here, Rule 1.7(a) of the Massachusetts Rules of Professional Conduct prohibits attorneys from representing a client if "the representation of one client will be directly adverse to another client." Consequently, an attorney is precluded from "act[ing] as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated." Mass. R. Prof. Conduct 1.7 cmt. 6. This prohibition "serves as a prophylactic measure to protect confidences that a client may have shared with his or her

attorney . . . and safeguards loyalty as a feature of the lawyer-client relationship." Maling v. Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, 42 N.E.3d 199, 202 (Mass. 2015) (internal quotation marks and brackets omitted). "Ordinarily, a representation in a matter is completed when the agreed-upon assistance has been concluded." See Mass. R. Prof. Conduct 1.16 cmt. 1.

With regard to the early litigation, representation was completed under the terms of the first retainer agreement. With regard to the later litigation, representation was completed once that matter concluded, no later than 2010. Thus, after 2010, the only relationship in place between the Firm and CAR existed pursuant to the general advice agreement. The general advice agreement allowed for legal work to be performed on an as-needed basis at CAR's request. It is undisputed that, at the time the litigation commenced here, CAR had not requested legal advice since 2015 and that all work to be performed in response to CAR's earlier requests had been completed.

The dispute here raises the question of whether—in the absence of any ongoing work—the agreement to provide legal advice bars DLA Piper from representing a client adverse to CAR. Viewed from one perspective, the agreement served merely as a convenience for both parties in the event that CAR had further legal questions—obviating the need for establishing a new billing scheme, drafting and signing a new retainer agreement, and checking for conflicts every time a new legal matter arose. Although the general advice account provided a framework for representation, it represented no open legal matters. Viewed from another perspective, the agreement to provide legal advice if advice was requested made CAR an ongoing client, and the rule of imputed disqualification arguably applies, notwithstanding DLA Piper's internal steps to close its files. As discussed below, however, the court need not resolve this issue.

*B. The Rule Following Shohet's Departure from the Firm*

Shohet's retirement from DLA Piper on January 1, 2017, shifts the inquiry. The Massachusetts Rules of Professional Conduct provide that, "under certain circumstances," a law firm may "represent a person with interests directly adverse to those of a client represented by a lawyer who formerly was associated with the firm." Mass. R. Prof. Conduct 1.10 cmt. 7. Rule 1.10(b) provides:

> When a lawyer has terminated an association with a firm ("former firm"), the former firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the former firm, unless:
>
> (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
>
> (2) any lawyer remaining in the former firm has information protected by Rules 1.6 and 1.9(c)[1] that is material to the matter.

Here, it does not appear that the matter is the same or substantially related to the advice provided or the litigation in which Shohet previously represented the client. The firm has constructed an ethical screen to bar attorneys outside the Office of General Counsel from accessing files related to its former representation of CAR. Fitzsimmons, who assisted Shohet with fewer than two hours of legal research related to CAR, avers that that work was "unrelated to the facts and legal issues raised by the PDFfiller [c]laims." Accordingly, no attorney remaining at DLA Piper has confidential information material to the matter. For these reasons, as

---

[1] Rule 1.6 pertains to confidential information, which "consists of information gained during or relating to the representation of a client, whatever its source, that is (a) protected by the attorney-client privilege, (b) likely to be embarrassing or detrimental to the client if disclosed, or (c) information that the lawyer has agreed to keep confidential." Mass. R. Prof. Conduct 1.6 cmt. 3A. Rule 1.9(c) deals with duties to former clients.

to future litigation, Shohet's retirement removes the bar against DLA Piper attorneys' representation here.

    C.  *Application of the Rules Here*

Generally, the court's inquiry would be focused on the outset of the litigation and Shohet's departure would not be taken into account. Before the court had an opportunity to rule on CAR's motion, however, the parties voluntarily commenced ADR proceedings with Defendants represented by attorneys from DLA Piper. One week later, the parties jointly requested a stay of deadlines with respect to this motion.

As a practical matter, CAR's decision to proceed despite the prior attorney-client relationship with Shohet was not surprising. CAR was on notice that Shohet intended to retire from his position with DLA Piper as of January 1, 2017, and also knew that all matters arising under the general advice account had been resolved since 2015. At the same time, Defendants' lead attorney Strapp had no longstanding relationship with Shohet or DLA Piper, having joined its Boston office five days earlier and never having even communicated with Shohet. CAR's actions in proceeding to ADR and agreeing to stay proceedings relating to the motion to disqualify support the conclusion that there are no true issues of attorney-client loyalties at issue here.

At the same time, by agreeing to proceed with ADR without resolving the question of representation, CAR allowed Defendants to incur substantial costs for DLA Piper attorneys to investigate CAR's claims against PDFfiller. Moreover, the multiple ethical screens in place since August 2016 ensure that DLA Piper attorneys now at the firm have not had, and will not have, access to any confidential information previously entrusted by CAR to DLA Piper.

III. Conclusion

For the foregoing reasons, Plaintiff's Motion to Disqualify DLA Piper LLP Based upon Conflict of Interest [#55] is DENIED.

IT IS SO ORDERED.

Date: March 13, 2017                                          /s/ Indira Talwani
                                                              United States District Judge