# Exhibit A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CALIFORNIA ASSOCIATION OF REALTORS, INC.,<br>Plaintiff,<br>vs.<br>PDFFILLER, INC., VADIM YASINOVSKY, AND BORIS SHAKHNOVICH,<br>Defendants. | C.A. No. 1:16-cv-11021 |
| PDFFILLER, INC.<br>Counterclaim/Third-Party Plaintiff,<br>vs.<br>CALIFORNIA ASSOCIATION OF REALTORS, INC.<br>Counterclaim-Defendant,<br>and<br>REAL ESTATE BUSINESS SERVICES, INC. and RE FORMSNET LLC D/B/A ZIPLOGIX, LLC<br>Third-Party Defendants. | |

**SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS**

Michael G. Strapp (BBO # 653884)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447

Paolo Morante (admitted *pro hac vice*)
Peter J. Couto (admitted *pro hac vice*)
Adam I. Steene (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104

*Attorneys for Defendants and Counterclaim/Third-Party Plaintiff*

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................... 1

II. ARGUMENT ..................... 1

A. CAR's Tying Practices Are A Commonly Recognized Form of Monopolization ..................... 1

B. PDFfiller Has Alleged That CAR Has A High Market Share, An Accepted Proxy for Market Power ..................... 3

III. CONCLUSION ..................... 6

## I. INTRODUCTION

The CAR Parties' Reply essentially argues that PDFfiller's antitrust claims should be dismissed because (a) being a monopolist is not unlawful, and (b) PDFfiller has not pled barriers to entry into the tying product market for California EFRE. Both of these arguments miss the point. While obtaining monopoly power through legitimate competition may not be unlawful, obtaining or maintaining such power through a tying scheme is unlawful, and the CAR Parties offer no authority to the contrary. Here, PDFfiller has pled that CAR abused its power in the market for California EFRE to force consumers, through an illegal tying arrangement, to manage and edit CAR EFRE only with zipForm, PTM Software offered by the CAR Parties. This is enough to move this case to discovery. Similarly, the CAR Parties point to no authority for the proposition that pleading barriers to entry is required for an antitrust claim to survive a motion to dismiss, particularly where, as here, PDFfiller alleges that CAR has a 90% market share and has forced consumers to pay zipForm's inflated price to use CAR EFRE. For these reasons, and all the reasons set forth in PDFfiller's opposition brief, the CAR Parties' motion to dismiss should be denied.

## II. ARGUMENT

### A. CAR's Tying Practices Are A Commonly Recognized Form of Monopolization.

The CAR Parties seek to avoid liability by arguing that their status as a monopolist in the California EFRE market immunizes their tying practices. *See* Reply at 6-7. As CAR acknowledges, however, possession of monopoly power is unlawful when "it is accompanied by an element of anticompetitive conduct." CAR Memo. in Sup. of MTD (Doc. 122) at 18 (quoting *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004)). Here, PDFfiller has alleged that the CAR Parties have engaged in tying, conduct that

the Supreme Court has held to be anticompetitive. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984) (a "seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms. When such 'forcing' is present, competition on the merits in the market for the tied item is restrained, and the Sherman Act is violated."). This well-pled allegation is sufficient to defeat CAR's Rule 12(b)(6) motion.

The CAR Parties also argue that there can be no liability for CAR's decision to license its forms to its subsidiary. *See* Reply at 1 (Doc. 127). This point is both misguided and irrelevant – CAR's conduct rose to the level of illegal tying not when it licensed its EFRE to zipForm, but when it forced consumers to use zipForm as a precondition to purchasing CAR EFRE. It was at that point that the CAR Parties ceased trying to compete for real estate PTM Software customers on the merits. Instead, CAR ***forced*** its California EFRE customers to use zipForm despite the availability of other real-estate-specific PTM Software. This is precisely the harm that the Sherman Act prohibits. *See Jefferson Parish*, 466 U.S. at 14-15 (If market power "is used to impair competition on the merits in another market, a potentially inferior product may be insulated from competitive pressures. This impairment could either harm existing competitors or create barriers to entry of new competitors in the market for the tied product. . . . [T]o permit restraint of competition on the merits . . . would be . . . to condone 'the existence of power that a free market would not tolerate.'") (internal citations omitted).

The CAR Parties' reliance on *Trinko* is misplaced. The plaintiff in *Trinko* sought access to the facilities of a monopolistic competitor, and the Court upheld the monopolist's right to deny such access. *See Trinko*, 540 U.S. at 408. But the case involved no allegation of two separate product markets, or of any tying between them. Indeed, the *Trinko* decision neither discussed

nor altered the law of tying. While a monopolist is ordinarily entitled to extract monopoly profits from the sale of the product over which it holds a monopoly (*id.* at 407), "the law draws a distinction between the exploitation of market power by merely enhancing the price of the tying product, on the one hand, and by attempting to impose restraints on competition in the market for a tied product, on the other. . . . [I]f that power is used to impair competition on the merits in [the tied] market, a potentially inferior product may be insulated from competitive pressures. This impairment could either harm existing competitors or create barriers to entry of new competitors in the market for the tied product." *Jefferson Parish*, 466 U.S. at 14. Antitrust law therefore proscribes this type of conduct. *Id.* at 15.

PDFfiller has alleged that there are two separate products (Amended Counterclaim ¶ 29 (Doc. 100); Amended Third Party Complaint ¶ 29 (Doc. 101)), and its case rests on CAR's abuse of its market power in the tying market for California EFRE to foreclose competition on the merits in the tied market for PTM Software. Under *Jefferson Parish*, CAR's monopoly power cannot immunize its abusive tying behavior.

**B. PDFfiller Has Alleged That CAR Has A High Market Share, An Accepted Proxy for Market Power.**

This court has held that a high market share in the tying product market may be used to demonstrate power in that market. *See In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 388 and n.19 (D. Mass. 2013). Last year, the First Circuit similarly found that "[a]n 87% market share would almost certainly be a clear indication of market dominance." *Flovac, Inc. v. Airvac, Inc.*, 817 F.3d 849, 854 (1st Cir. 2016). PDFfiller has alleged that CAR has a 90% share of the California EFRE market. Amended Counterclaim ¶ 30; Amended Third Party Complaint ¶ 30. At the motion to dismiss stage, this satisfies the pleading requirements for

market power.[1] *See Hewlett-Packard Co. v. Boston Scientific Corp.*, 77 F. Supp. 2d 189, 195-96 (D. Mass. 1999).

In its opening brief, the CAR Parties argued that market power pleadings must contain allegations of barriers to entry, but they improperly built this argument upon decisions at summary judgment or later. *See* Opposition at 12 (Doc. 123). The CAR Parties' Reply fares no better: of eight cases cited on this issue (*see* Reply at II.B 4-7), only three were decisions on a motion to dismiss,[2] and all three are unavailing.

This court's decision in *Hewlett-Packard* (Reply at 5) actually harms CAR's position because it does not require an allegation of barriers to entry and, to the contrary, notes that "[f]or pleading purposes, an allegation of market share of 70 percent has been held to be an adequate basis for an inference of power in a relevant market." 77 F. Supp. 2d at 195-96.

Similarly, in *CCBN.Com, Inc. v. Thomson Financial, Inc.*, 270 F. Supp. 2d 146 (D. Mass. 2003) (Reply at 5), this Court dismissed the antitrust claim because plaintiff pleaded only that defendant was "dominant" ***and "ma[de] no estimates of [defendant's] share*** " of the relevant market. 270 F. Supp. 2d at 155 (emphasis added). The decision thus, at least implicitly, stands for the proposition that an estimate of high market share would be sufficient to allege market

[1] By citing *Illinois Tool Works, Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006), the CAR Parties appear to suggest that PDFfiller relies on CAR's copyrights to demonstrate market power. This is unsupported by PDFfiller's antitrust counterclaim, third-party complaint, or opposition brief, none of which argues that CAR's copyrights are the basis for PDFfiller's market power allegations. Instead, PDFfiller points to a variety of factors, including CAR's 90% share of the relevant market, that are indicative of such power.

[2] *Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*, 79 F.3d 182 (1st Cir. 1996) was decided after a full jury trial. *Illinois Tool Works*, 547 U.S. 28 (2006), *Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*, 838 F.3d 421 (3d Cir. 2016), and *Geneva Pharm. Tech. Corp. v. Barr Labs., Inc.*, 386 F.3d 485 (2d Cir. 2004) were all appeals from summary judgment. *AVX Corp. v. Cabot Corp.*, 600 F. Supp. 2d 286 (D. Mass. 2009) was a decision on a motion for summary judgment.

power. Unlike the plaintiff in *CCBN.com*, PDFfiller has estimated CAR's share of the relevant market at 90%.[3]

As explained above, *Trinko* (Reply at 7) is inapposite because it does not discuss or alter the illegality of tying. *Trinko* also makes no mention of the pleading standards for market power.

The CAR Parties' reliance on a statement from the American Bar Association's Antitrust Law Developments fares no better. Reply at 5. The treatise has no force of law, and none of the court decisions it cites concerns dismissal of an antitrust claim because of a plaintiff's failure to plead barriers to entry. Further, the statement that the CAR Parties quote appears in a section of the treatise which is focused on the evidence needed to establish an antitrust claim following discovery. *See* ABA Section of Antitrust Law, Antitrust Law Developments (8th Ed. 2017), at 228-240. In discussing the required evidence, the treatise cites to some court decisions (among many others) ***denying*** motions to dismiss where, in addition to alleging high market shares, the plaintiff also alleged high barriers to entry and other facts (such as supra-competitive pricing) supporting the existence of market power. *See id.* at 229, n.41. This does not mean, however, that alleging barriers to entry is required in order to survive a motion to dismiss. Indeed, as the treatise notes, the Supreme Court has held that "a factfinder could infer monopoly power from an 80 to 95 percent market share." *Id.* at 229 (citing *Eastman Kodak Co.*, 504 U.S. at 481).

In sum, the CAR Parties do not offer a single decision from any court granting a motion to dismiss antitrust claims because of a plaintiff's failure to plead barriers to entry.

[3] As demonstrated in PDFfiller's Opposition Brief, a plaintiff may also plead direct evidence of market power by alleging supracompetitive prices. *See* Opposition at 14 (citing *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d at 389). PDFfiller has pleaded such facts in relation to the tied product market, alleging that zipForm costs hundreds of dollars more than competing PTM Software for California EFRE. Amended Counterclaim ¶¶ 32-33. CAR's suggestion that this sort of evidence must be supported by "an analysis of the defendant's costs" is plainly only appropriate after discovery, which is why the cases CAR quotes in support relate to decisions on summary judgment motions. *See* Reply at 6, n.1 (quoting *Mylan Pharms.*, 838 F.3d at 434).

## III. CONCLUSION

For the foregoing reasons, and those discussed in PDFfiller's opposition brief, the Court should deny the CAR Parties' motion to dismiss.

Dated: May 17, 2017

Respectfully submitted,

*/s/ Michael G. Strapp*

Michael G. Strapp (BBO #653884)
**DLA Piper LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Telephone: 617.406.6031
Facsimile: 617.406.6100
michael.strapp@dlapiper.com

Paolo Morante (admitted *pro hac vice*)
paolo.morante@dlapiper.com
Peter J. Couto (admitted *pro hac vice*)
peter.couto@dlapiper.com
Adam I. Steene (admitted *pro hac vice*)
adam.steene@dlapiper.com
**DLA Piper LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104
Telephone: 212.335.4500
Facsimile: 212-335-4501

*Attorneys for Defendants and Counterclaim/Third-Party Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 17, 2017.

/s/ Michael G. Strapp
Michael G. Strapp